UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**CSAA FIRE AND CASUALTY INSURANCE COMPANY (f/k/a ACA INSURANCE COMPANY)**

        **Plaintiff,**

**vs.**

**JASON YERUSHALMI**

        **Defendant.**

## CSAA's FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, CSAA Fire and Casualty Insurance Company by and through its undersigned counsel, Morgan, Akins, & Jackson, PLLC, hereby files this Civil Action Complaint seeking Declaratory Relief under 28 U.S.C. §§ 2201 and 2202, *et. seq.* regarding its rights and duties with respect to a policy of insurance in which Defendant Jason Yerushalmi is an insured. In support of this Request for Declaratory Relief, Plaintiff avers the following:

### THE PARTIES

1. Plaintiff, CSAA Fire & Casualty Insurance Company (formerly known as ACA Insurance Company) ("CSAA") is an insurance company duly organized and incorporated under the laws of the state of Indiana.

2. At all relevant times, CSAA is a personal lines insurance carrier that is authorized to issue policies of insurance in the State of Connecticut.

3. Upon information and belief, Defendant Jason Yerushalmi (hereinafter

"Defendant Yerushalmi") is an adult citizen and/or resident of the State of Connecticut, maintaining a residence at 230 Woodbine Lane, Fairfield, Connecticut.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter of controversy exceeds $75,000.

5.      This is an action arising under Connecticut law and for declaratory judgment pursuant to 28 U.S.C. § 2201, et seq., and Rule 57 of the Federal Rules of Civil Procedure.

6.      Venue is proper in this District as Defendant Yerushalmi resides in the State of Connecticut, which is also the location where the homeowner's insurance policy discussed below was delivered.

## NATURE OF THE ACTION AND RELIEF SOUGHT

7.      This declaratory judgment action arises out of a March 17, 2021 Complaint that Makenzee Montanaro ("Montanaro") filed against Defendant Yerushalmi alleging a sustained and intentional publication and/or dissemination of false statements and/or images depicting Montanaro in a false and/or demeaning manner, causing her reputational harm, emotional distress, embarrassment, humiliation, etc. A true and correct copy of the Complaint filed under the caption *Montanaro v. Yerushalmi*, Docket No. FBT-CV21-6105559-S, pending in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport, is attached hereto as Exhibit "1" (the "Liability Complaint").

8.      This Court has jurisdiction over this action as there is a real, substantive and justiciable issue in controversy between the parties to this action with respect to the existence of insurance coverage under a policy of insurance issued by CSAA to Defendant Yerushalmi. A judicial determination and a declaration of the rights and obligations of the parties is

necessary and appropriate at this time because CSAA has no adequate remedy at law which will resolve the current controversy.

9.      Venue is properly laid in the District of Connecticut because (1) Defendant Yerushalmi resides and will be served in this District, specifically Fairfield, Connecticut; (2) the events giving rise to this matter occurred in this District; and (3) Plaintiff regularly and continuously conducts business in said District.

10.     CSAA seeks a declaration that the terms of the Policy do not obligate CSAA to pay defense or indemnity to Defendant Yerushalmi for any sums that they may become legally obligated to pay with respect to the claims brought in the Liability Complaint.

11.     A true and correct copy of the pertinent portions of the CSAA Policy, policy number HO5-004022721 (the "Policy"), is attached to this Complaint as Exhibit "2."

## FACTUAL BACKGROUND

12.     Commencing on or about March 19, 2019 and continuing through June 2019, a period of approximately three months, Defendant Yerushalmi intentionally, willfully, wantonly and/or recklessly published false statements and/or images concerning an individual, Ms. Montanaro, that attended high school with him at Fairfield Warde High School. See Exhibit "1", ¶¶ 1, 3-4, 10, 21.

13.     The above-referenced statements and/or images falsely portrayed Montanaro – a high school junior at that time – in a demeaning, disparaging, offensive, lewd, lascivious and sexually provocative manner and falsely attributed sexual conduct and/or a willingness to perform sexual acts to Montanaro. See Exhibit "1", ¶¶ 3-4.

14.     The above-referenced statements and/or images also described and/or depicted Montanaro and her physical appearance in a manner invasive of her privacy and likely to

cause her "unwarranted and undeserved humiliation, embarrassment, vulnerability to ridicule, attack, scorn and shame. See Exhibit "1", ¶ 4.

15. Defendant Yerushalmi published and/or otherwise disseminated (e.g., via social media and/or electronically) these statements and/or images to the common high school community shared by him and Montanaro, among others, which statements and/or images did in fact reach and influence a wide audience, causing Montanaro reputational damage and extreme emotional distress. See Exhibit "1", ¶¶ 5-6.

16. Despite being instructed to cease and desist from publishing/disseminating and further retract previously published statements and/or images, Defendant Yerushalmi refused to do so and even continued to publish such statements and/or images. See Exhibit "1", ¶ 7.

17. As a result of Defendant Yerushalmi publishing and otherwise disseminating the above-referenced statements and/or images, Montanaro suffered damage to her reputation, emotional and psychological pain, anguish, humiliation and trauma. See Exhibit "1", ¶ 8.

**THE CSAA INSURANCE POLICY**

18. In response to the Liability Complaint, Defendant Yerushalmi submitted a claim to CSAA seeking defense and indemnification under the Policy.

19. The Policy was issued to Mark and Jayne Yerushalmi (the named insureds), the parents of Defendant Yerushalmi.

20. The Policy, in Form HW 00 05 10 00 ("HO Form") defines an "insured", in pertinent part, as a resident of the named insureds' household that is a relative of the named insured. See Exhibit "2", Policy (Form HW 00 05 10 00)pp. 9-10.

21. The Policy under the HO Form defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which

results, during the policy period, in:

      a.   "Bodily injury"; or

      b.   "Property damage".

See Exhibit "2", Policy (Form HW 00 05 10 00), p. 10.

22.     The Policy under the Personal Injury endorsement defines "personal injury", in pertinent part, as "injury arising out of one or more of the following offenses . . . : . . . (3) [i]nvasion of privacy, wrongful eviction or wrongful entry; (4) [p]ublication of material, in any manner, that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or (5) [p]ublication of material, in any manner, that violates a person's right of privacy." See Exhibit "2", Policy (Form HO 24 79 04 04), p. 39.

23.     The Policy under the HO Form also contains the following exclusion:

**SECTION II – EXCLUSIONS**

       \*   \*   \*   \*

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**
Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury** "Bodily injury", "personal injury" or "property damage" which is expected or intended by, or expected to result from the intentional acts or omissions of the "insured", even if the resulting "bodily injury", "personal injury" or "property damage":

    **a.** Is of a different kind, quality or degree than initially expected or intended; or
    **b.** Is sustained by a different person or, entity, or to different property, than initially expected or intended. However, this Exclusion **E.1.** does not apply to "bodily injury", "personal injury", or "property damage" resulting from the use of reasonable force by the "insured" to protect persons or property.

See Exhibit "2", Policy (Form HW 00 05 10 00), p. 26.

24.     The Policy under the HO Form also contains the following exclusion:

**SECTION II – EXCLUSIONS**

       \*   \*   \*   \*

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

. . .

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse** "Bodily injury" or "property damage" arising out of any:

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

See Exhibit "2", Policy (Form HW 00 05 10 00), p. 39.

25. The Policy through the Personal Injury endorsement also contains the following exclusion:

This insurance does not apply to:

**1.** "Personal Injury":

> **a.** Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";
> **b.** Arising out of publication of material, in any manner, if done by or at the direction of an "insured" with knowledge of its falsity;

. . .

> **d.** Arising out of a criminal act committed by or at the direction of an "insured";

. . .

See Exhibit "2" Policy (Form HO 24 79 04 04), p. 39.

26. The Policy also contains an umbrella policy or umbrella coverage/endorsement (hereinafter the "Umbrella Policy").

27. The Umbrella Policy defines "insured" as any "family member", which means a resident of the household of the named insured. See Exhibit "2" Policy (Form PW 98 01 05 06), p. 44.

28. The Umbrella Policy defines "occurrence" means an accident, including

continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

1. "Bodily injury"; or

2. "Property damage"

See Exhibit "2" Policy (Form PW 98 01 05 06), p. 45.

29.    The Umbrella Policy defines "personal injury", in pertinent part, as injury arising out … (3) [i]vasion or privacy, wrongful eviction or wrongful entry; (4) [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or (5) [o]ral or written publication of material that violates a person's right to privacy.

See Exhibit "2" Policy (Form PW 98 01 05 06), p. 45.

30.    The Umbrella Policy contains the following exclusion:

### III. Exclusions

**A.** The coverages provided by this policy do not apply to:

**1.** "Bodily injury" or "property damage" arising out of an act which is expected or intended by the "insured" to cause "bodily injury" or "property damage."

See Exhibit "2" Policy (Form PW 98 01 05 06), p. 45.

31.    The Umbrella Policy  also contains the following exclusion:

### III. Exclusions

**A.** The coverages provided by this policy do not apply to:

**2.** "Personal injury":

**a.** Arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity;

. . .

**c.** Arising out of a criminal act committed by or at the direction of the "insured";

See Exhibit "2", Policy (Form PW 98 01 05 06), p. 46.

32. The Umbrella Policy also contains the following exclusion:

**III. Exclusions**

**A.** The coverages provided by this policy do not apply to:

. . .

**12.** "Bodily injury" or "personal injury" arising out of:

. . .

**b.** Sexual molestation, corporal punishment or physical or mental abuse;

See Exhibit "2", Policy (Form PW 98 01 05 06), p. 46.

33.    CSAA denied Defendant's request for defense and indemnification.

## COUNT I – DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201 and 2202, *et. seq.*

### HO Form - Nonaccidental Conduct/Intentional Acts Exclusion

34.    Plaintiff incorporates paragraphs 1 through 33 of its Complaint and the attached exhibits herein by reference with the same force and effect as if set forth verbatim.

35.    The crux of the allegations in the Liability Complaint all arise out of Defendant Yerushalmi's intentional actions in publishing and/or otherwise disseminating false, defamatory, libelous and/or otherwise demeaning statements and/or images concerning Ms. Montanaro to an audience.

36.    Defendant Yerushalmi's actions in publishing and/or otherwise disseminating statements and/or images of Montanaro to an audience(s) and continuing to do so despite being instructed to cease and desist, were not accidental, fortuitous or unexpected, but rather

were intentional.

37.    As detailed above, Defendant Yerushalmi's actions fall within the scope of the Policy's intentional act exclusion.

38.    CSAA therefore has no obligation to defend or indemnify Defendant Yerushalmi in connection with the Liability Complaint

WHEREFORE, CSAA Fire and Casualty Insurance Company respectfully requests judgment in its favor and against the Defendant and further request that this Honorable Court:

(a) Enter a declaratory judgment that CSAA has no obligation to defend or indemnify Jason Yerushalmi in the litigation captioned *Montanaro v. Yerushalmi*, Docket No. FBT-CV21-6105559-S, pending in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport;

(b) For those costs incurred pursuant to law; and

(c) For such other relief as is just and equitable herein.

## COUNT II – DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201 and 2202, *et. seq*.

### HO Form - Physical or Mental Abuse Exclusion

39.    CSAA incorporates paragraphs 1 through 38 of its Complaint and the attached exhibits herein by reference with the same force and effect as if set forth verbatim.

40.    As detailed above, Defendant Yerushalmi's actions at all relevant times fall within the scope of the Policy's Physical or Mental Abuse exclusion.  See Exhibit "1".

41.    Defendant Yerushalmi is not entitled to coverage for damages caused by his physical or mental abuse and/or embarrassment, harassment or humiliation of Montanaro.

42.    CSAA therefore has no obligation to defend or indemnify Defendant

Yerushalmi in connection with the Liability Complaint.

WHEREFORE, CSAA Fire and Casualty Insurance Company respectfully requests judgment in its favor and against Defendant and further request that this Honorable Court:

(a) Enter a declaratory judgment that CSAA has no obligation to defend or indemnify Jason Yerushalmi in the litigation captioned *Montanaro v. Yerushalmi*, Docket No. FBT-CV21-6105559-S, pending in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport;

(b) For those costs incurred pursuant to law; and

(c) For such other relief as is just and equitable herein.

**COUNT III – DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201 and 2202,** *et. seq.*

**Personal Injury Endorsement Exclusions**

43.     CSAA incorporates paragraphs 1 through 42 of its Complaint and the attached exhibits herein by reference with the same force and effect as if set forth verbatim.

44.     The crux of the liability complaint establishes that Defendant Yerushalmi published statements in a manner calculated to reach, be seen by, inform and influence the widest possible audience of Montanaro's past, present and future, and did, in fact, reach, influence, inform and impact said audience causing said audience to form false opinions and impressions about Montanaro. See Exhibit "1", ¶¶ 5-6.

45.     The liability complaint further sets forth that Defendant Yerushalmi was instructed to cease, desist, refrain from and retract publications but Defendant refused to do so and, in fact, continued to publish such statements and images. See Exhibit "1", ¶ 7.

46.     The Policy, specifically under the personal injury endorsement, in pertinent

part, removes liability coverage for "personal injury": (1) caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury"; (2) arising out of publication of material, in any manner, if done by or at the direction of an "insured" with knowledge of its falsity; and/or (3) arising out of a criminal act committed by or at the direction of an "insured".

47.   As detailed above, Defendant Yerushalmi's actions at all relevant times fall within the scope of the Policy's personal injury exclusions.

48.   Defendant Yerushalmi is not entitled to coverage for damages and personal injury caused by him, or done at his direction, with the knowledge that his actions would violate the rights of Montanaro and would inflict "personal injury".

49.   Defendant Yerushalmi is not entitled to coverage for damages and personal injury caused by him, or done at his direction, arising out of publication of material with knowledge of its falsity.

50.   CSAA therefore has no obligation to defend or indemnify Defendant Yerushalmi in connection with the Liability Complaint.

WHEREFORE, CSAA Fire and Casualty Insurance Company respectfully requests judgment in its favor and against Defendant and further request that this Honorable Court:

(a) Enter a declaratory judgment that CSAA has no obligation to defend or indemnify Jason Yerushalmi in the litigation captioned *Montanaro v. Yerushalmi*, Docket No. FBT-CV21-6105559-S, pending in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport;

(b) For those costs incurred pursuant to law; and

(c) For such other relief as is just and equitable herein.

**COUNT IV – DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201 and 2202,** *et. seq.*

**Umbrella Policy – Nonaccidental Conduct/Intentional Acts Exclusion**

51.    CSAA incorporates paragraphs 1 through 50 of its Complaint and the attached exhibits herein by reference with the same force and effect as if set forth verbatim.

52.    The crux of the allegations in the Liability Complaint all arise out of Defendant Yerushalmi's intentional actions in publishing and/or otherwise disseminating false, defamatory, libelous and/or otherwise demeaning statements and/or images concerning Ms. Montanaro to an audience.

53.    Defendant Yerushalmi's actions in publishing and/or otherwise disseminating statements and/or images of Montanaro to an audience(s) and continuing to do so despite being instructed to cease and desist, were not accidental, fortuitous or unexpected, but rather were intentional.

54.    As detailed above, Defendant Yerushalmi's actions fall within the scope of the Policy's intentional act exclusion.

55.    CSAA therefore has no obligation to defend or indemnify Defendant Yerushalmi in connection with the Liability Complaint.

WHEREFORE, CSAA Fire and Casualty Insurance Company respectfully requests judgment in its favor and against the Defendant and further request that this Honorable Court:

(a) Enter a declaratory judgment that CSAA has no obligation to defend or indemnify Jason Yerushalmi in the litigation captioned *Montanaro v. Yerushalmi*, Docket No. FBT-CV21-6105559-S, pending in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport;

(b) For those costs incurred pursuant to law; and

(c) For such other relief as is just and equitable herein

**COUNT V – DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201 and 2202,** *et. seq.*

**Umbrella Policy - Personal Injury Exclusions**

56.    CSAA incorporates paragraphs 1 through 55 of its Complaint and the attached exhibits herein by reference with the same force and effect as if set forth verbatim.

57.    The crux of the liability complaint establishes that Defendant Yerushalmi published statements in a manner calculated to reach, be seen by, inform and influence the widest possible audience of Montanaro's past, present and future, and did, in fact, reach, influence, inform and impact said audience causing said audience to form false opinions and impressions about Montanaro. See Exhibit "1", ¶¶ 5-6

58.    The liability complaint further sets forth that Defendant Yerushalmi was instructed to cease, desist, refrain from and retract publications but Defendant refused to do so and, in fact, continued to publish such statements and images. See Exhibit "1", ¶ 7.

59.    The Policy, and specifically the Umbrella Policy, in pertinent part, removes liability coverage for "personal injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

60.    As detailed above, Defendant Yerushalmi's actions at all relevant times fall within the scope of the Umbrella Policy's personal injury exclusions.  See Exhibit "1".

61.    Defendant Yerushalmi is not entitled to coverage for damages and personal injury caused by him, or done at his direction, arising out of publication of material with knowledge of its falsity.

62.    CSAA therefore has no obligation to defend or indemnify Defendant

Yerushalmi in connection with the Liability Complaint.

WHEREFORE, CSAA Fire and Casualty Insurance Company respectfully requests judgment in its favor and against Defendant and further request that this Honorable Court:

(a) Enter a declaratory judgment that CSAA has no obligation to defend or indemnify Jason Yerushalmi in the litigation captioned *Montanaro v. Yerushalmi*, Docket No. FBT-CV21-6105559-S, pending in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport;

(b) For those costs incurred pursuant to law; and

(c) For such other relief as is just and equitable herein.

## COUNT VI – DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201 and 2202, *et. seq.*
### Umbrella Policy - Physical or Mental Abuse Exclusion

63.    CSAA incorporates paragraphs 1 through 62 of its Complaint and the attached exhibits herein by reference with the same force and effect as if set forth verbatim.

64.    The Policy, and specifically the Umbrella Policy, in pertinent part, removes liability coverage for "personal injury" arising out of physical or mental abuse.

65.    As detailed above, Defendant Yerushalmi's actions at all relevant times fall within the scope of the Umbrella Policy's physical or mental abuse exclusion.  See Exhibit "1".

66.    Defendant Yerushalmi is not entitled to coverage for damages and personal injury arising out of physical or mental abuse.

67.    CSAA therefore has no obligation to defend or indemnify Defendant Yerushalmi in connection with the Liability Complaint.

WHEREFORE, CSAA Fire and Casualty Insurance Company respectfully requests judgment in its favor and against Defendant and further request that this Honorable Court:

(a) Enter a declaratory judgment that CSAA has no obligation to defend or indemnify Jason Yerushalmi in the litigation captioned *Montanaro v. Yerushalmi*, Docket No. FBT-CV21-6105559-S, pending in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport;

(b) For those costs incurred pursuant to law; and

(c) For such other relief as is just and equitable herein.

**PLAINTIFF**
**CSAA FIRE AND CASUALTY INSURANCE COMPANY**

By:    /ss/*Matthew R. Hutchinson*
        Matthew R. Hutchinson
        Federal Bar No.: ct31666
        **MORGAN, AKINS & JACKSON, PLLC**
        175 Capital Blvd., 4th Floor
        Rocky Hill, CT 06067
        Telephone: 475-212-8282
        Email: mhutchinson@morganakins.com