UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CSAA FIRE & CASUALTY | : | |
| INSURANCE COMPANY | : | No. 3:24cv01455 (VDO) |
| *formerly known as* | : | |
| ACA Insurance Company, | : | |
|     Plaintiff | : | |
| | : | April 28, 2025 |
| v. | : | |
| | : | |
| JASON YERUSHALMI, | : | |
|     Defendant | : | |

## <u>MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT</u>

### <u>INTRODUCTION</u>

Two words - **Offense** and **Occurrence** - determine the appropriate outcome in this case. One involves accidents. The other does not. The contracts expressly provide coverage for both, but each occupies its own category of coverage, with separate definitions, coverages and exclusions. Improperly applying to one category provisions applicable to the other works a manifest injustice which Defendant calls upon this court to remedy.

On page 1 of Plaintiff's Memorandum (Doc. #29), four sentences into the "Introduction", it makes the following sweeping proclamation:

> In the first instance, to fall within the Policy's grant of coverage, the allegations must establish liability arising from **accidental** conduct under the Policy's definition of **occurrence**.[1] Id, Emphasis Added.

That statement is not only flat wrong, the opposite is true. This case does **not** involve an **occurrence** arising from **accidental** conduct causing **Bodily injury** or

---

[1] Defendant apologizes for the extensive use of highlighting. The significant number of similar-sounding but controlling words and phrases, however, is such that Defendant highlighted them to simplify the court's analysis of the operative language. The highlighting was applied to distinguish certain operative words from others, not to emphasize their meaning.

**Property damage**. It involves a covered ***offense***, arising from ***intentional*** conduct producing ***Personal Injury***. By plain, applicable contract language, the words **occurrence** and **accident** have nothing to do with this case.

That is not the only "opposite" proposition advanced by Plaintiff. Defamation and Privacy invasion are clearly defined as covered ***offenses***, arising from ***intentional*** conduct producing ***Personal Injury***. They are not **accidental occurrences** producing **Bodily Injury** or **Property damage.** Yet, at commencing at page 2 of its brief, Plaintiff attributes to **offense-based Personal Injury** coverage an exclusion applicable only to **accident-based Bodily Injury** and **Property Damage**.

And it is not just that, that provision, on its face, is patently inapplicable to **Personal Injury** based on the absence of the words "**Personal Injury**"; or that The Personal Injury Endorsement expressly ***deletes*** (Defendant's Exhibit O.1) that exclusion from the Homeowners policy, prohibiting its use as an exclusion for Personal Injury.  In its amended complaint at paragraph 23 (Defendant's Exhibit L.1), Plaintiff quotes that exclusionary language, but inserts the words "**Personal Injury"** - language not contained in the original - creating the illusion that **Personal Injury** coverage is expressly excluded by clause that actually says the opposite. (Compare Defendant's Exhibits L, M.1[2])

Plaintiff also presses the court to rely on the mental abuse clause appearing at Exhibit M.1, which, in addition to being expressly applicable only to **occurrences** causing

---

[2] On March 17, 2025, Defendant submitted his Opposition to Plaintiff's Motion to Dismiss Counterclaims. Submitted therewith were Exhibits marked A through K. Those same Exhibits are directly relevant here. will be referenced and incorporated herein. To avoid cluttering the court's and parties' files with duplicates, Defendant respectfully incorporates those exhibits herein requesting that the court take judicial notice thereof. Defendant begins his lExhibit labeling for this submission with the letter "L". Defendant trusts that this comports with the court's preferences, but will amend this filing to satisfy the court's expectations if it does not.

**bodily injury** or **property damage**, was also deleted for **Personal Injury** purposes by the above referenced endorsement (Defendant's Exhibit O.1)

Then, having advanced the false proposition that **accidental** conduct is essential to **Personal Injury** coverage, Plaintiff cites legions of accident cases which are every bit as inapplicable to this matter as the exclusions he asks this court to impose on Defendant.

At Defendant's Exhibit A.1 Plaintiff proffers in support of his contract claims a 62-page amalgam of 20 separate documents, all advanced as "The Policy". In truth, only a handful of paragraphs appearing in eight pages contained in three of those documents – Home Owners, Personal Injury Endorsement, and Umbrella policy (Defendant's Exhibits N, O, P) - have anything to do with the issues before this court.

Also noteworthy is that, in its Statement of Facts, Plaintiff ignores the plain language of the state court complaint's (Plaintiff's Exhibit B) alternative pleading. At Fact 8 It chooses to point out the complaint paragraph 10 allegation that Defendant Yerushalmi published the statements and images willfully, wantonly and with reckless disregard for the truth.  It carefully refrains, however, from quoting the alternative allegation appearing at Count Six, paragraph 25 which reads "Said Defendant acted negligently in causing said statements and images to be published".

It appears, therefore, that flooding the zone with excessive, inapplicable and inaccurate contract quotes, irrelevant contract material, no guidance as to the location of the relevant contract provisions, large volumes of inapplicable case law purportedly interpreting inapplicable clauses, selectively misleading quotes from Defendant's complaint and outsized exaggerations of the complaint's plain language is a tactic intended to win by confusion.

The major part of Defendant's presentation, therefore, is directed to narrowing and establishing clarity as to which contract clauses actually control and applying the plain language of those clauses to the plain language of the challenged complaint (Defendant's Exhibits L - P).

## I.     ANALSYSIS OF APPLCIABLE CONTRACT CLAUSES

One thing Plaintiff does not do is provide a guide to the plain contract language needed by the court to properly assess the merits of this case.

Defendant intends to provide that guidance.

Of the 20 documents[3] consisting of 61 pages of material proffered by Plaintiff in its Exhibit A-1, only a handful of paragraphs in six pages contained in three of those documents[4] are relevant. (Defendant's Exhibits N, O, P).

---

[3]  List of documents including in Plaintiff's "Homeowners" Policy, Exhibit A-1:
Homeowners Policy Declarations
ASSURANCE + ENDORSEMENT
CREDIT CARD, ELECTRONIC FUND TRANSFER CARD OR ACCESS DEVICE, FORGERY AND COUNTERFEIT MONEY COVERAGE
HOMEOWNERS ENHANCEMENT (FORM HW-5)
HOMEOWNERS 5 – COMPREHENSIVE FORM
IDENTITY FRAUD EXPENSE COVERAGE
Lender's Loss Payable Endorsement - Form 438BFUNS
LIMITED "FUNGI", WET OR DRY ROT, OR BACTERIA COVERAGE
NAME CHANGE ENDORSEMENT
NO SECTION II -  LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS LIMITED SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS
ORDINANCE OR LAW INCREASED AMOUNT OF COVERAGE
PERSONAL INJURY - CONNECTICUT
YOUR PERSONAL UMBRELLA LIABILITY ENDORSEMENT
PERSONAL UMBRELLA LIABILITY POLICY -- CONNECTICUT
PERSONAL UMBRELLA LIABILITY POLICY EXCLUSION – FUNGI, WET OR DRY ROT, OR BACTERIA ENDORSEMENT
PREMISES ALARM OR FIRE PROTECTION SYSTEM
SCHEDULED PERSONAL PROPERTY ENDORSEMENT
SPECIAL PROVISIONS - CONNECTICUT
VICIOUS DOG AND DOGS WITH PRIOR BITE HISTORY NOTIFICATION REQUIREMENTS
WATER BACK UP AND SUMP DISCHARGE OR OVERFLOW

[4]  List of relevant documents:
HOMEOWNERS 5 – COMPREHENSIVE FORM
PERSONAL INJURY -  CONNECTICUT
PERSONAL UMBRELLA LIABILITY POLICY -- CONNECTICUT

Submitted herewith as (Defendant's Exhibits N, O, P) are the relevant pages excerpted from the Homeowners, Personal Injury and Umbrella policies. Their names have been imprinted in Red at the top on each page to help keep track of which document is being viewed. Green highlighted paragraphs and blued highlighted words signify **applicable** language and exclusions claimed by Defendant. Yellow highlighted paragraphs and red highlighted words signify **inapplicable** language and exclusions claimed by Plaintiff. It is Defendant's hope that the highlighting will aid the court in quickly assessing the coverages, definitions and exclusions.

There are two relevant categories of coverage:

1. **Personal Injury** caused by **Offenses** such as Defamation and Privacy invasion, and

2. **Bodily Injury** and **Property Damage** caused by **occurrences** resulting from **accidents**;

A. **HOMEOWNERS POLICY**

The Homeowner's Policy (Defendant's Exhibits N) contains no reference to Personal Injury. Its plain language addresses only Bodily Injury and Property Damage coverages and exclusions. Indeed, Plaintiff's oft-cited Section II Exclusion: "Expected and Intended Injury" exclusion: is specifically restricted to Bodily Injury and Property Damage, as is the Mental Abuse exclusion. (Defendant's Exhibit N.4)

So, on its face, the Homeowner's Policy does not cover Personal Injury. And its exclusions do not apply.

B. **PERSONAL INJURY ENDORSEMENT**

The Personal Injury Endorsement (Defendant's Exhibit O), however, explicitly modifies the Homeowner's policy to **add** Personal Injury coverage to the Homeowner's policy. In doing so it:

1. Defines the coverage as **Personal Injury** arising out of one or more of the **offenses** described (including defamation and privacy invasion);

2. **Deletes** the Homeowners Section II – Exclusions "with respect to the coverage provided by this endorsement. And the deleted Homeowner's Section II Exclusions (Defendant's Exhibit O) expressly include for deletion the Expected or intentional act and Mental Abuse exclusions advanced by Plaintiff; and

3. **Replaces** said Homeowners Section II – Exclusions (Defendant's Exhibit N.4, 5) with its own exclusions specifically direct to Personal Injury. (Defendant's Exhibit O.1)

In short, the Personal Injury Endorsement modifies the Homeowners Policy to Include coverage for Personal Injury offenses, to provide exclusions specifically tailored to Personal Injury offenses, and to delete any Homeowners Policy exclusion which might purport to restrict Personal Injury offense coverage.

Any way one may look at it, neither the Homeowners "Expected or Intended Injury Exclusion" nor the Mental Abuse exclusion applies. One wonders, therefore, how the words "Personal Injury" found their way into the purportedly quoted language at Defendant's Exhibit L, (compare Defendant's Exhibit M) given the contracts' clear mandate not to exclude "Personal Injury".

C. **UMBRELLA POLICY**

The Umbrella (Defendant's Exhibit P) explicitly covers both **offense**-based **Personal Injury** and **occurrence**-based **Bodily Injury** and **Property Damage.** It draws the same distinctions between the two as those set forth in the Personal Injury Endorsement and Homeowner's Policy combined (Defendants Exhibits N, O, P). Defendant respectfully submits that the highlighted sections make crystal clear what is covered and what is excluded.

## ARGUMENT

**PLAINTIFF HAD A DUTY TO DEFEND**

In *DaCruz v. State Farm*, 268 Conn. 675; 846 A.2d 849; 2004 Conn. LEXIS 182, the Connecticut Supreme court ruled that "[i]f an allegation of the complaint falls *even possibly* within the coverage, then the insurance company **must** defend the insured." Id, 687, Emphasis added. But setting up the non-existent "accident" exclusion clears the way to advance the opposite end of another principle discussed in *DaCruz* - that denial is only appropriate if it "... is only possible inference that can be drawn from an insured's conduct". See *DaCruz*, 690.

CSAA's position is clearly not that set forth in *DaCruz*.

Plaintiff's focus on intent is also misdirected. Just as it does in this filing, in its February 21, 2024, letter (Defendant's Exhibit D), Plaintiff repeatedly and wrongly emphasizes the *intentional* nature of Defendant's "*actions*" in publishing, rather than the lack of *intent* or knowledge with respect to *falsity*. (Defendant's Exhibit D.2) Undersigned counsel had extensively addressed that in his April 8, 2024, letter (Defendant's Exhibit E, especially E.2-E.3) in response to CSAA's February 21, 2024 letter. There counsel

7

discussed *Allstate Ins. Co. v. Limone*, 2009 Conn. Super. LEXIS 3253; 2009 WL 5302922)

(E.2) citing *Limone* for the following quote from the Connecticut Supreme Court in *Imperial*

*Casualty Indemnity Co. v. State*, 246 Conn. 313, 714 A.2d 1230 (1998):

> Specifically, the definition of personal injury indicates that certain injuries may be covered **that could have resulted only from intentional conduct, such as false arrest, false imprisonment, malicious prosecution** and actions brought under [*40] 42 U.S.C. § 1983, **as well as many injuries that generally involve intentional conduct, such as** assault and battery, *libel, slander*, *defamation*, discrimination and the *violation of other rights*, privileges and immunities secured by the constitution and laws of the United States or the state. Id, 39-40, Emphasis Added.

In short, offenses constituting personal injury clearly contemplate that there will

necessarily have been intentional conduct. The question in defamation and privacy

invasion cases is not whether the actor intended to publish, or how wide the intended

audience may be, but whether the material was published with knowledge of falsity

(Defendant's Exhibit O.1, P.1).

The evidence reveals five separate CSAA denial letters dating from November 21,

2021, four of which are submitted herewith (Defendant's Exhibits D, F, H and J), each

advancing the above-described inaccurate interpretations of CSAA's own policy

language, despite undersigned counsel's repeated written rebuttals. Those same

inaccuracies are advanced in the Amended Complaint filed herein, with one added

disturbing twist – the inclusion of the word Personal Injury in three places an a quoted

exclusion that does not contain those words.

So, in addition to illustrating that coverage actually does apply, Plaintiff's denials,

in this case alone, constitute a pattern of unfair business, insurance and trade practice.

Moreover, Defendant's Exhibit K is a copy of Hon. Vanessa L. Bryant's decision in *Cyr v.*

*CSAA Fire & Casualty* (Doc # 34, March 20, 2017), denying CSAA's motion to dismiss

effectively the same counts in that case that it seeks to have stricken in this case. There, CSAA was alleged to have engaged in the same unfair business practice it is alleged to be engaging in here, to wit: contorting inapplicable exclusion language to deny benefits conferred by the contract:

> "[T]he Defendant in its discretion, unreasonably and in bad faith, sought out other policy provisions and interpreted these and other policy provisions in a manner for the purpose of denying benefits despite the aforementioned provisions of the policy conferring benefits."

> Id, Page 2.

> And the *Cyr* case cites CSAA's alleged implementation of that practice in connection with numerous cases other than Plaintiff *Cyr*'s as follows:

> ... Defendant has attempted to deny coverage **for claims such as the Plaintiffs'** based on other purported exclusions, despite provisions within the policy that provide coverage for chemical reaction and collapse, to which there is no chemical reaction exclusion. Id. at ¶ 22. The Defendant provided a false and misleading denial of coverage that was contrary to other sections of its policy that provide coverage for chemical reaction and collapse. Id. at ¶ 23. Nowhere in the policy does it exclude coverage for chemical reaction. Id.

> Id., Page 3, Emphasis added.

Defendant respectfully requests that this court take judicial notice of the *Cyr* opinion and its content as evidence of the same pattern of unfair insurance business practices as alleged herein. Defendant respectfully submits that sufficient evidence of a pattern of unfair insurance, business and trade practices has clearly been advanced. Defendant submits that said practices put the particularly vulnerable policy beneficiaries here at a significant disadvantage. Inter alia, both Mr. Yerushalmi and Ms. Montanaro were mere teenagers when this first occurred. Denial of any defense to this litigation imposed extreme expense, hardship and stress on the policy holders who had purchased the policies in good faith and relied on CSAA to be there when needed. Ms. Montanaro,

who settled on the first day of jury selection, had just begun her first year of law school. The intense pressure of her schoolwork, while selecting a jury in a very serious case, with no offer or prospect of an offer from CSAA, significantly impacted the resolution that brings us to this court.

In short, this has never been a good faith coverage dispute. The pattern and practice of citing inapplicable contract language, many times over the course of years, to deny coverage in the face of contrary language, in this case, and in the *Cyr* case, and in the "numerous" cases referenced in *Cyr*, constitutes the pattern and practice of bad faith insurance, business and trade practice contemplated by the statutory and case authorities.

Defendant respectfully submits that the content of this response, in combination with the content of the answer and counterclaims on file, provides a good faith basis for the court to allow the two challenged counts to proceed, and to permit discovery to more fully develop the evidence in support thereof. He requests, therefore, that the court deny the motion. Should the court deem it appropriate, however, for Defendant to amend his counterclaims to more fully set forth facts in support of the counts, he respectfully requests that he be allowed to do so.

**PLAINTIFF HAD A DUTY TO INDEMNIFY**

A careful review of the applicable contract language (Defendant's Exhibits N, O, P) demonstrates that coverage clearly existed for the Defendant's defamation and privacy invasion claims. The case for coverage far exceeds *DaCruz*'s "even possibly", standards. The *Limone* and *Imperial Casualty Indemnity Co.* cases, supra, make crystal clear that

10

the allegations here of Defamation and Privacy Invasion are squarely in the mainstream of covered offenses.

**PLAINTIFF'S TACTICS CONSTITUTE BREACHES OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, CUTPA AND CUIPA.**

In his response (Doc. # 25) to Plaintiff's Motion to Dismiss Counterclaims Defendant carefully addressed Plaintiff's challenges to Counts Four and Five of the Counterclaims, charging Plaintiff with Unfair Practices. The same unfair conduct warranting relief for those counts constitutes a good faith basis for finding violation of the Covenant of Good Faith and Fair Dealing.

Again, in the interest of not cluttering the docket with repetitive material, Defendant respectfully incorporates herein as though set forth in full, his arguments contained in his Opposition to said motion appearing at Doc. #25.

CONSLUSION

Plaintiff's Motion for Summary Judgment should be denied.

Respectfully submitted,
DEFENDANT JASON YERUSHALMI


/s/ Robert J. Sullivan, Jr.
By_____
Robert J. Sullivan, Jr.
LAW OFFICES OF ROBERT SULLIVAN
2220 Park Ave., Bridgeport, CT 06604
Tel. No. 203/227-1404
Federal Bar No. CT08969
RSullivan@SullivanFirm.net

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2025, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/ Robert J. Sullivan, Jr.

_____

Robert J. Sullivan, Jr.