UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------- x
CSAA FIRE & CASUALTY INSURANCE       :
COMPANY,       :
      :
           Plaintiff,       :
      :           24-CV-1455 (SFR)
      v.       :
      :
JASON YERUSHALMI,       :
      :
           Defendant.       x
------------------------------------------------------------------

## MEMORANDUM & ORDER

Before me is Plaintiff CSAA Fire & Casualty Insurance Company's ("CSAA") Motion for Summary Judgment and Motion to Dismiss Count Five of Defendant Jason Yerushalmi's Counterclaims. For the reasons that follow, I grant these motions in their entirety.

## I.   BACKGROUND

### A.   Factual Background

The factual circumstances underlying this case are not in dispute; instead, the disagreements primarily relate to the interpretation of contract terms.

CSAA issued a homeowner's insurance policy with an effective date of October 21, 2018 through October 21, 2019 ("Homeowner's Policy") to Mark and Jayne Yerushalmi, the parents of Defendant Jason Yerushalmi ("Yerushalmi"). Def.'s 56(a)2 St., ECF No. 33, ¶ 1; ECF No. 30-2. CSAA also issued a Personal Umbrella Liability Policy ("Umbrella Policy"), covering the same individuals with the same effective date. ECF No. 30-2, at 42.

In 2021, Montanaro commenced suit (the "Montanaro lawsuit") against Yerushalmi, alleging defamation, libel per se, malice in fact, invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. Def.'s 56(a)2 St. ¶ 2; ECF

1

No. 30-4. The complaint in the Montanaro lawsuit alleges that from March 2019 through June 2019, Yerushalmi published images and statements about Montanaro which :

> Falsely portrayed [Montanaro] in a demeaning, disparaging and offensive manner. . . . [F]alsely portrayed [Montanaro] in a lewd, lascivious, and sexually provocative manner. . . . [F]alsely attributed sexual conduct to [Montanaro]. . . . [F]alsely attributed to [Montanaro] a willingness to perform lewd, lascivious, sexual acts on, to or for others. . . . Said statements and images, alone and in combination, described and depicted [Montanaro] and her physical appearance in a manner invasive of [Montanaro's] privacy and likely to cause [her] unwarranted and undeserved humiliation, embarrassment, vulnerability to ridicule, attack, scorn and shame.

ECF No. 30-4 ¶ 4. The complaint further alleges that these statements and images were "published, posted, disseminated and circulated electronically, including on social media," and were directed to Montanaro and Yerushalmi's "common high school community and beyond, in a manner calculated to reach, be seen by, inform and influence the widest possible audience," and that it in fact did reach this audience. *Id.* ¶¶ 5-6. Moreover, the complaint alleges that Yerushalmi was "instructed to cease, desist, refrain from and retract said publications" but "refused to do so and, in fact, continued to publish such statements and images." *Id.* ¶ 7.

On November 16, 2021, CSAA notified Yerushalmi through his counsel that it would not defend nor indemnify him in the Montanaro lawsuit. Def.'s. 56(a)2 St. ¶ 10; ECF No. 30-3. A "stipulation of judgment was entered" in the Montanaro lawsuit on December 6, 2024. Def.'s 56(a)2 St. ¶ 12.

CSAA commenced this action on September 11, 2024, ECF No. 1, seeking declaratory judgment that "CSAA has no obligation to defend or indemnify Jason Yerushalmi" in the Montanaro lawsuit." *See, e.g.*, Am. Compl. ¶ 50.

2

### 1.   Homeowner's Policy

The Homeowner's Policy purports to cover both Mark and Jayne Yerushalmi and "relatives" who are members of their "household," presumably including Yerushalmi. ECF No. 30-2, at 9.

The "Personal Injury – Connecticut" endorsement of the Homeowner's Policy defines personal injury as

> [I]njury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:
>
> . . .
>
> 3. Invasion of privacy . . . .
>
> 4. Publication of material, in any manner, that slanders or libels a person . . . .
>
> 5. Publication of material, in any manner, that violates a person's right of privacy.

ECF No. 30-2, at 39. The policy states that, in the event of a suit for damages "resulting from an offense, defined under 'personal injury', to which this coverage applies," CSAA will "pay up to our limit of liability for the damages" and "provide a defense at our expense by counsel of our choice." *Id.*

The exclusions listed in the Personal Injury – Connecticut endorsement replace the exclusions in the Homeowner's Policy and provide that the policy will not apply to:

> 1. "Personal injury":
>
> > a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";
> >
> > b. Arising out of publication of material, in any manner, if done by or at the direction of an "insured" with knowledge of its falsity;

3

. . .

> d. Arising out of a criminal act committed by or at the direction
> of an "insured".

*Id* .

### 2.    The Umbrella Policy

The Umbrella Policy purports to cover Mark and Jayne Yerushalmi and any "family member," including a "relative" who is a "resident of your household." ECF No. 30-2, at 44. It expands the coverage limits and provides additional coverage to the "underlying insurance," which here includes the Homeowner's Policy. *Id.* at 45. The Umbrella Policy includes the following definition of personal injury:

> K. "Personal injury" means injury arising out of one or more of the following
> offenses but only if the offense was committed during the policy period:
>
>  . . .
>
>> 4. Oral or written publication of material that slanders or libels a person
>> . . .
>>
>> 5. Oral or written publication of material that violates a person's right of
>> privacy.

*Id*. The Umbrella Policy states that CSAA "will pay damages in excess of the 'retained limit'" (defined as the "total limits of any 'underlying insurance' . . . that applies to an . . . offense") for "'Personal injury' for which an 'insured becomes legally liable due to one or more offenses listed under the definition of 'personal injury' to which this insurance applies." *Id.* The Umbrella Policy also states that the insurer will "provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent." *Id.*

However, the Umbrella Policy contains exclusions to this coverage, including:

> 2. "Personal injury":

> a. Arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity;
>
> . . .
>
> c. Arising out of a criminal act committed by or at the direction of the "insured" . . . .

*Id.* at 46.

## B.    Procedural History

CSAA filed the Complaint in this case on September 11, 2024, ECF No. 1, and an Amended Complaint on December 30, 2024, ECF No. 18. Yerushalmi filed an Answer and Counterclaims on January 6, 2025.[1] CSAA filed a Motion to Dismiss Counterclaims Four and Five on January 24, 2025. ECF No. 22. On September 16, 2025, I granted the Motion to Dismiss. ECF No. 35.

On April 7, 2025, CSAA filed this Motion for Summary Judgment. ECF No. 28. Response and Reply briefs were filed on April 28, 2025 and May 12, 2025 respectively. ECF Nos. 31, 34.

After my ruling on the Motion to Dismiss, Yerushalmi filed an amended Answer on October 17, 2025. ECF No. 37. CSAA filed a renewed Motion to Dismiss Counterclaim Five on October 30, 2025. ECF No. 39. Response and Reply briefs were filed on December 3, 2025 and December 17, 2025. ECF Nos. 43, 44.

---

[1] This case was transferred to me from the Honorable Vernon D. Oliver on January 6, 2025.

## II.    LEGAL STANDARD

### A.    Declaratory Judgment Standard

Under the Declaratory Judgment Act, in "a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "An action under the Declaratory Judgment Act must be sufficiently real and immediate to allow for specific and conclusive relief, as well as be ripe for adjudication." *Farm Fam. Cas. Ins. Co. v. Samperi*, 242 F. Supp. 3d 83, 87 (D. Conn. 2017) (quoting *Colony Ins. Co. v. Jack A. Halprin, Inc.*, No. 3:10-CV-1059 CSH, 2012 WL 2859085, at *6 (D. Conn. 2012) (internal quotation marks omitted)).

In Connecticut, "[t]here is no question that a declaratory judgment action is a suitable vehicle to test the rights and liabilities under an insurance policy." *St. Paul Fire & Marine Ins. Co. v. Shernow*, 577 A.2d 1093, 1094 (Conn. App. 1990). "When a determination of the duty to defend can be made and thus clarify the insurer's obligations in the underlying tort action, the [Declaratory Judgment Act] is properly invoked." *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 444 (D. Conn. 2010) (citing *U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348, 353 (E.D.N.Y. 2006)).

### B.    Summary Judgment Standard

"Connecticut courts have held that summary judgment is an appropriate vehicle for determining whether an insurer owes an insured a duty to defend on the basis of an insurance policy, because the '[c]onstruction of a contract of insurance presents a question of law for the court.'" *Farm Family*, 242 F. Supp. 3d at 88 (quoting *Mara*, 699 F. Supp. 2d at 444). "[W]hether an insurer has a duty to defend its insured is purely a question of law, which is to

6

be determined by comparing the allegations [in the underlying] complaint with the terms of the insurance policy." *Cmty. Action for Greater Middlesex Cnty., Inc. v. Am. All. Ins. Co.*, 757 A.2d 1074, 1079 (Conn. 2000). "[I]t is axiomatic that no insurer is bound to provide indemnification or defense beyond the scope of the coverage described in the insurance contract, the policy." *Shernow*, 577 A.2d at 1095 (citation omitted). In an insurance coverage case, it is consequently "the function of the court to construe the provisions of the insurance contract and, if no material facts are at issue, the question of whether coverage exists is a question of law that is appropriately decided on a motion for summary judgment." *Peerless Ins. Co. v. Disla*, 999 F. Supp. 261, 263 (D. Conn. 1998).

As with any motion for summary judgment, the court will grant summary judgment in a contract case if the record shows no genuine issue as to any material fact and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The nonmoving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

### C.    Motion to Dismiss Standard

"Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362 (W.D.N.Y. 2018) (citation omitted). A complaint may not survive unless it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

### III.    <u>DISCUSSION</u>

### A.    Motion for Summary Judgment

In its Amended Complaint, CSAA seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it has no obligation to defend or indemnify Jason Yerushalmi in the Montanaro lawsuit. CSAA has structured its Amended Complaint with six counts, three relating to the Homeowner's Policy and three relating to the Umbrella Policy. Am. Compl. at ¶¶ 34-67. For each policy, CSAA has pleaded three separate theories to support relief, each under a different policy exclusion: the "Nonaccidental Conduct/Intentional Acts Exclusion";

the "Physical or Mental Abuse Exclusion"; or the "Personal Injury Endorsement Exclusions." *Id.* The relief sought in each of these six counts is identical.[2]

Under the plain language of the contract, if the claim against Yerushalmi is subject to an exclusion in both the Homeowner's and Umbrella Policies, then CSAA will not be bound by the terms of the policy to pay damages or provide a legal defense. Thus, a finding that liability is excluded under the Homeowner's and Umbrella Policies on any one of the three theories presented in the Amended Complaint would be enough to grant summary judgment in favor of CSAA. *See, e.g., Mara*, 699 F. Supp. 2d at 449-51 (stating that "if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend" and thus where an exemption applies, "the court will grant summary judgment in favor of the insurer who relies upon such exemption") (citations omitted).

### 1.      Principles of Insurance Policy Construction and Duty to Defend

There is no genuine dispute as to any material facts. This action instead turns on the interpretation of the Homeowner's and Umbrella Policies, and whether the conduct as alleged in the Montanaro lawsuit's complaint is subject to exclusions in both contracts. Under Connecticut law, an

> insurance policy is to be interpreted by the same general rules that govern the
> construction of any written contract and enforced in accordance with the real

---

[2] CSAA's Motion for Summary Judgment argues that Yerushalmi's actions as described in the underlying complaint were not accidental and thus were not "occurrences" covered by the Homeowner's Policy's. ECF No. 29, at 8-10. Moreover, CSAA asserts that Yerushalmi's actions fall within the intended acts and mental abuse exclusions. *Id.* at 10-14. Yerushalmi agrees that coverage is not available under the "occurrences" portion of the Homeowner's Policy. ECF No. 31, at 1-2. Instead, he maintains that coverage exists under the Personal Injury endorsement. *Id.* at 7-8. Yerushalmi faults CSAA for "attribut[ing] to offense-based Personal Injury coverage an exclusion applicable only to accident-based Bodily Injury and Property Damage." *Id.* at 2. I agree that this case does not involve an "occurrence" and thus the policy exclusions applicable only to occurrences are irrelevant.

intent of the parties as expressed in the language employed in the policy. The determinative question is the intent of the parties, that is, what coverage the plaintiff expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy. If the words in the policy are plain and unambiguous . . . the language . . . must be accorded its natural and ordinary meaning. If the policy is ambiguous, such ambiguity is resolved against the insurance company. As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. The burden of proving that an exclusion applies is on the insurer, but the insured has the burden of proving that an exception to an exclusion reinstates coverage.

*Gibson v. First Mercury Ins. Co.*, 633 F. Supp. 3d 627, 639 (D. Conn. 2022) (internal quotation marks and citations omitted).

Where "an insurer is guilty of a breach of its contract to defend, it is liable to pay to the insured not only his reasonable expenses in conducting his own defense but, in the absence of fraud or collusion, the amount of a judgment [or settlement] obtained against the insured up to the limit of liability fixed by its policy." *R.T. Vanderbilt Co., Inc. v. Cont'l Cas. Co.*, 870 A.2d 1048, 1063 (Conn. 2005) (internal quotation marks omitted, alteration in original). "[T]he duty to defend is broader than the duty to indemnify." *Nash St., LLC v. Main St. Am. Assurance Co.*, 251 A.3d 600, 606 (Conn. 2020) (internal quotation marks omitted). "An insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage." *Id.* (quoting *Travelers Cas. & Sur. Co. of Am. v. Netherlands Ins. Co.*, 95 A.3d 1031, 1049 (Conn. 2014)). "Because all that is necessary to trigger an insurer's duty to defend is a possibility of coverage, any uncertainty as to whether an alleged injury is covered works in favor of providing a defense to an insured, and uncertainty may be either factual or legal." *Nash St., LLC*, 251 A.3d at 607.

When assessing whether an insurance company breached its duty to defend by declining to defend based on exclusions in a policy, the task is therefore not to determine

whether the exclusions "actually preclude coverage" or to "determine conclusively what those exclusions mean." *Id.* at 610. Rather, the court looks to whether there was "any possibility of coverage" at the time of the tendering of the defense. *Id.* In assessing whether there was a possibility of coverage, the court must consider Connecticut's precedent favoring a narrow interpretation of insurance policy exclusions and rule that ambiguous policy terms must be construed in favor of the insured. *Nationwide Mut. Ins. Co. v. Pasiak*, 173 A.3d 888, 896 (Conn. 2017) (stating that under Connecticut law, when "construing exclusion clauses, the language should be construed in favor of the insured unless [the court] has a high degree of certainty that the policy language clearly and unambiguously excludes the claim") (internal quotation marks omitted).

In assessing whether an insurance company has breached the duty to defend, courts look to the allegations in the underlying complaint. The Connecticut Supreme Court has repeatedly explained that under the "well established 'four corners' doctrine," a "liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Netherlands Ins. Co.*, 95 A.3d at 1049 (internal quotation marks omitted). Thus, "the duty to defend is triggered whenever a complaint alleges facts that potentially could fall within the scope of coverage." *Id.* (internal quotation marks omitted).

### 2.    Personal Injury Endorsement Exclusions

CSAA argues, *inter alia*, that the complaint in the Montanaro lawsuit alleges facts that are subject to at least one of the exclusions in the Personal Injury Endorsement, and therefore that CSAA is not liable for the duty to defend or indemnify Yerushalmi for the Montanaro lawsuit. ECF No. 29, at 14-21. Yerushalmi responds that "[i]f an allegation of the complaint

11

falls even possibly within the coverage, then the insurance company must defend the insured."

ECF No. 32, at 7 (alteration in original) (emphasis removed). Yerushalmi also argues that the

Montanaro lawsuit alleges one count of negligence, and therefore the Personal Injury

Endorsement exclusions (which require intentional acts) do not apply. *Id.* at 3. CSAA replies

that the facts alleged in the underlying complaint do not support a claim of negligence, and

that Yerushalmi's other arguments fail to address the point in contention: whether the relevant

exclusions bar coverage. ECF No. 34, at 1-3. I agree with CSAA.

Although CSAA relies on three different personal injury exclusions, I here focus on the

"criminal acts" exclusion. The Homeowner Policy's Personal Injury Endorsement covers

certain personal injury lawsuits, including:

> [I]njury arising out of one or more of the following offenses, but only if the
> offense was committed during the policy period:
>
> . . .
>
> 5. Publication of material, in any manner, that violates a person's right
> of privacy.

ECF No. 30-2, at 39. However, coverage for injuries resulting from such offenses are excluded

from coverage, where the offense arose "out of a criminal act committed by or at the direction

of an insured." *Id.*

I conclude that the criminal act exclusion unambiguously reaches the conduct alleged

in the underlying complaint.

The Connecticut Supreme Court has held that similarly worded criminal act exclusions

apply to "acts for which the insured was or *could be* convicted under applicable criminal law."

*Allstate Ins. Co. v. Barron*, 848 A.2d 1165, 1179 (Conn. 2004) (emphasis added). Under this

clear precedent, an actual conviction is not required; the underlying complaint must simply

show that the insured committed or directed some act for which they could be convicted under applicable criminal law.

Under Connecticut law:

(a) A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person.

Conn. Gen. Stat. § 53a-181(a). The complaint in the Montanaro lawsuit alleges that Yerushalmi publicly shared statements and images about Montanaro with their "common high school community and beyond" via social media which were "demeaning, disparaging and offensive" and falsely portrayed her as "lewd, lascivious, and sexually provocative." ECF No. 30-4 ¶¶ 4-5. Posting these false statements and images publicly to a shared community damaged Montanaro's reputation and caused her extreme emotional distress, recklessly creating a risk of "inconvenience, annoyance or alarm" to Montanaro. *Id.* ¶¶ 5-6.[3] Moreover, these posts were plainly "offensive, indecent [and] abusive" matter concerning Montanaro, and the Montanaro lawsuit alleges that such posts were "exhibited" and "distributed" via social media. *Id.*; Conn. Gen. Stat. § 53a-181(a). Thus, although the record contains no indication that Yerushalmi was charged with or convicted of a crime, he clearly could have been convicted under applicable criminal law for his conduct and therefore the criminal act exclusion in the Homeowner's Policy applies to bar coverage for his conduct. *See State v. Buhl*, 138 A.3d 868 (Conn. 2016) (finding that lewd and lascivious material posted on social

---

[3] It might also be argued that Yerushalmi evinced "intent to cause inconvenience, annoyance or alarm" after he was "instructed to cease, desist, refrain from and retract said publications" but "refused to do so and, in fact, continued to publish such statements and images." ECF No. 30-4, at 3.

networking website, with intent to inconvenience, annoy, or alarm victim, was sufficient to support a conviction under Conn. Gen. Stat. § 53a-181(a)(4)).

Yerushalmi does not specifically argue that the criminal act exclusion is inapplicable, instead focusing on the inapplicability of the "knowledge with respect to falsity" exclusion. ECF No. 32, at 7-8. However, although Yerushalmi stresses that this case involves "intentional conduct," *id.* at 1-2, he also observes that the underlying complaint alternatively pleads that he acted negligently, *id.* at 3. Thus, it might be argued that, in light of the negligence allegation, I should not conclude that Yerushalmi's conduct was necessarily undertaken with the requisite intent to create criminal liability for breach of peace in the second degree under Connecticut law. *See* ECF No. 31, at 3, 7-8. But the complaint in the Montanaro lawsuit alleges negligence in wholly conclusory terms[4] and the complaint's detailed factual allegations about Yerushalmi's conduct are simply inconsistent with negligent acts. Moreover, breach of peace covers not only circumstances where someone acts with "intent to cause inconvenience, annoyance or alarm," but also circumstances where a person "recklessly creat[es] a risk" of causing "inconvenience, annoyance or alarm." Conn. Gen. Stat. § 53a-181(a). At the very least, the Montanaro lawsuit alleges facts showing that Yerushalmi recklessly created a risk of inconvenience, annoyance or alarm to Montanaro by his actions.

I therefore find that, as a matter of law, the facts alleged in the Montanaro lawsuit fall within the "criminal acts" exclusion. Thus, CSAA is entitled to a declaratory judgment as a

---

[4] *See* ECF No. 30-4 ¶ 24 ("Said Defendant acted negligently in causing said statements and images to be published, thereby inflicting serious emotional distress upon the plaintiff.").

matter of law that it has no obligation under the Homeowner's Policy to defend or indemnify Jason Yerushalmi in the Montanaro lawsuit.

### 3.    Umbrella Policy Exclusions

The Umbrella Policy includes a comparable "criminal act" exclusion. The Umbrella Policy covers personal injury lawsuits, including:

> "Personal Injury" . . . arising out of one or more of the following offenses, but only if the offense was committed during the policy period:
>
> > 5. Oral or written publication of material, that violates a person's right of privacy.

ECF No. 30-2, at 45.

> The Umbrella Policy also excludes:
>
> > 2. "Personal injury":
> >
> > > . . .
> > >
> > > c. Arising out of a criminal act committed by or at the direction of the 'insured' . . . .

*Id.* at 46. This language is effectively identical to the "criminal acts" exclusion language under the Personal Injury Endorsement, and my analysis of it is also identical. I therefore find that, as a matter of law, the facts alleged in the Montanaro lawsuit fall into the "criminal acts" exclusion of the Umbrella Policy. Thus, CSAA is entitled to a declaratory judgment as a matter of law that it has no obligation under the Umbrella Policy to defend or indemnify Jason Yerushalmi in the Montanaro lawsuit.

### B.    Motion to Dismiss Counterclaims

CSAA also brings a Motion to Dismiss Count Five of Yerushalmi's Counterclaims. ECF No. 39. In addition, in the Motion for Summary Judgment, CSAA argues that Yerushalmi's "common law and statutory bad faith claims are not viable absent a breach of

15

the underlying contract." ECF No. 29, at 21. Indeed, every count of Yerushalmi's Counterclaims is premised on Yerushalmi's contention that CSAA was obligated to provide defense and indemnification in the Montanaro lawsuit under the terms of the Homeowner's and Umbrella Policies. ECF No. 37 ¶¶ 39, 43, 47, 52. Because I have found that CSAA has no obligation to defend or indemnify Yerushalmi, Yerushalmi's First Counterclaim for breach of contract has no arguable basis in fact or law, and his other Counterclaims alleging breach of the duty of good faith and fair dealing, common law bad faith, and statutory bad faith are also not viable. *See Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 416 (D. Conn. 2017) ("As with breach of the implied covenant of good faith and fair dealing, a claim for violation of CUTPA/CUIPA cannot succeed in the absence of a viable claim for breach of contract."). I therefore grant CSAA's Motion to Dismiss, and grant summary judgment on the remaining counts of Yerushalmi's Counterclaims.

## IV. CONCLUSION

CSAA's motion for summary judgment and motion to dismiss are hereby granted in their entirety. Declaratory judgment is hereby entered that CSAA has no obligation under the Homeowner's Policy or the Umbrella Policy to defend or indemnify Jason Yerushalmi in the litigation captioned *Montanro v. Yerushalmi*, Docket No. FBT-CV21-6105559-S.

**SO ORDERED.**

New Haven, Connecticut
March 20, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge